[No. 7455.]

THE PEOPLE V. MILLER.

1. STATUTES—*Construction*—In construing a statute effect is to be given to every clause, if it be possible.

2. MUNICIPAL CORPORATIONS—*Ordinance Prohibiting What Is Prohibited by Statute*, involves no conflict.

3. LOCAL OPTION ACT—*Effect as to Existing Municipal Ordinances*—Secs. 4101 and 4111 of the Revised Statutes suspend all ordinances of every municipality either permitting, forbidding, or regulating the sale of intoxicating liquors, within territory where the statute has become of force.

*Error to Prowers County Court.*—Hon. W. E. FEE, Judge.

Mr. ALFRED TODD, for plaintiff in error.

No appearance for defendant in error.

Mr. JUSTICE HILL delivered the opinion of the court:

Upon appeal to the county court the defendant in error was tried for the violation of a city ordinance of the town of Lamar, which prohibited the sale of intoxicating liquors. By an instruction he was found not guilty. The people upon the relation of the town bring the case here for review upon error.

It stands admitted that at the time of the alleged sale, and all times since, the town of Lamar was anti-saloon territory by reason of the result of an election authorized by general sections 4094-4111, Revised Statutes, 1908, commonly known as the Local Option Act. These facts were the reason for the instruction.

The sole question for determination is whether the Local Option Act, when in force, suspends the force and effect of an ordinance prohibiting the sale of intoxicating liquors within the same territory. It will be observed by its terms that it is optional with any designated territory whether it shall remain under previous existing laws, or whether it shall adopt the provisions of the Local Option Act. The question then presents itself whether it was the intention, when certain districts became anti-saloon territory, to have a uniform law upon the subject in all such territory, and to that extent, when adopted, whether it repealed or suspended the prior statute and ordinances covering the same questions.

Prior to the adoption of our Local Option Act, so far as we are advised it has uniformly been held by other courts where local option laws have been enacted that whenever they became operative by virtue of an election, they became the exclusive law, within that territory, upon the questions directly covered by the act, and that all previous acts and authority on the subject were either repealed or became suspended or inoperative during the period the Local Option Act is in force.— Vol. 23, Cyc., p. 93; *Mernaugh v. City of Orlando,* 27 So. (Fla.) 34; *Butler & Chapman v. State of Florida,* 25 Fla. 347; *Village of Union Star v. Martin,* 143 Mo. App. 226; *Village of Sparta v. Boorom,* 129 Mich. 555; *Dean v. State,* 92 S. W. (Tex.) 38; *Turner v. City of Forsyth,* 3 S. E. (Ga.) 649; *Boone v. The State,* 12 Tex. App. 184; *The People v. Wade,* 101 Mich. 89; *State ex rel. v. Smith,* 7 So. (Fla.) 848; *State v. Graves,* 115 S. W. (Mo.), 1054; *Kerr v. Mohr et al.,* 103 S. W. (Tex.) 210; *Williams et al. v. Davidson,* 70 S. W. (Tex.) 987; *Tompkins v. State,* 90 S. W. (Tex.) 1019.

Plaintiff in error contends, regardless of decisions in other states, that it is settled in this jurisdiction that no conflict arises from the fact that a general law and a municipal ordinance prohibits the same or similar offenses. Such is the general rule laid down in *Hughes v. The People,* 8 Colo. 536, and *McInerney v. City of Denver,* 17 Colo. 302. This rule should be followed here, did this act not show a clear intention otherwise, or if it was silent upon the question of any legislative intention upon the subject; but it should not be followed against positive expressions of an intention to the contrary, gathered from the act itself. Most of the decisions heretofore cited from other states were announced prior to the adoption of our Local Option Act. Regardless of such ruling our legislature did not see fit to use any language which would convey a different intention, but, to the contrary, by express language, they assumed this to be its meaning and further emphasized it by using specific language to protect the force and effect of such prohibitory ordinances then in existence until

the Local Option Act became effective. This is apparent when we consider this act in connection with the previous existing laws upon the subject.

Prior to the adoption of the Local Option Act there had been delegated to cities and towns subject to the laws of the state the power to license, regulate and prohibit the sale or giving away of intoxicating liquors. The Eighteenth subdivision of general section 6525, R. S., 1908, containing these powers in part reads:

"*Eighteenth*—To have the right, subject to the laws of the state, to license, regulate or prohibit the selling or giving away of any intoxicating, malt, vinous, mixed or fermented liquor within the limits of the city or town, * * *; *Provided,* That the city council in cities, or board of trustees in towns, may grant permits to druggists for the sale of liquor * * * under such restrictions and regulations as may be provided by ordinance."

That the Local Option Act is in conflict with parts of many ordinances enacted by authority of this section, cannot be disputed. It is likewise in conflict with parts of the section itself. The Local Option Act repealed all acts or parts of acts in conflict therewith; that this would carry with it the repeal or suspension of any ordinances in conflict with it, is likewise not disputed. We then come to the question of whether it was the intention of the legislature in these repealing acts and other expressions therein to provide a complete and exclusive remedy upon the subjects covered. In this connection it will be observed they were explicit in providing that such ordinances then in force or those thereafter adopted (which were suspended during the period of the existence of the Local Option Act) should again become in full force and effect at any time after the act ceased to be operative. These expressions in direct language can certainly have no other meaning than that it was the intention to provide a complete and exclusive remedy concerning the prohibition of the sale of such liquors

in anti-saloon territory. To better illustrate, general section 4111, *supra*, being the repealing and saving clause, reads:

"All acts or parts of acts in conflict with any of the provisions of this act, are hereby repealed, but an ordinance passed by a municipal corporation under the authority given in section 4403, Colorado statutes, page 1234, volume 3, 1905 edition, prohibiting the selling or giving away of intoxicating or malt liquors shall remain in full force and effect until thirty days after an election has been held in accordance with the provisions of section 2 of this act."

It will be observed that this refers only to ordinances prohibiting the selling or giving away of intoxicating liquors. By this proviso it was intended that they should remain in full force and effect until thirty days after an election creating anti-saloon territory. This is a positive declaration of the legislature that they understood that the act itself, otherwise than as therein reserved and provided, repealed or suspended the operation of all ordinances prohibiting the selling and giving away of intoxicating liquors during the period the Local Option Act was in force. It also, of necessity, impliedly conveys the conclusion that the effect and operation of such ordinance should cease and terminate at the expiration of thirty days after such election adopting the Local Option Act. This position is further emphasized by a statement to be found in general section 4101, R. S., 1908, which provides a method for reversing the vote upon the subject, wherein it is said:

"If a majority of the qualified electors voting upon such last mentioned proposition in any such political sub-division or district vote 'Yes,' such political sub-division or district shall cease to be 'Anti-Saloon Territory' and all resolutions and ordinances providing for the restricting, regulation or prohibition of the sale of intoxicating liquors or for the issuing of dram-shop licenses, the operation of which was suspended within such political sub-division or district by virtue of the vote therein to become 'Anti-Saloon Territory,' so far as then in force, and with all additions and amendments which in the

meantime may have been made thereto, shall become and be in force within said political sub-division or district to the same extent, only, however, as the same would then be in force had such political sub-division or district never become 'Anti-Saloon Territory.' "

It will be seen by the terms of this section it was intended by the adoption of the Local Option Act that all ordinances whether restrictive, regulative, licensing or prohibiting the sale of intoxicating liquors were suspended by such vote within such political sub-division, and by this section it provides that by a reversal of the vote whereby, the particular district ceases to be anti-saloon territory, then all such resolutions and ordinances, which were suspended by virtue of the vote to become anti-saloon territory, should again become in force to the same extent as the same would have been, had the political sub-division or district never been anti-saloon territory. Here again is a positive expression consistent with only one conclusion, viz., that it was intended during the period the Local Option Act was in force that the effect of all such ordinances was suspended.

General section 4110, *supra,* specifically states that this act shall be deemed and held to apply to all cities existing under special charters the same as those organized and existing under the general laws regulating towns and cities. This is a declaration of intention that when adopted it is to cover all cities and towns within the state.

In construing a statute, effect is to be given, if possible, to every clause and section in it.—*County Commissioners v. Wilson,* 15 Colo. 90. There is nothing in the other portions of the act in conflict with the provisions above referred to. Such being the case we are presented with no reason why full force and effect should not be given to them. They are clear and explicit; are in harmony with the context of the entire act and with the construction heretofore given similar acts by the courts of other states. We would be doing violence to the language used to ignore these express declarations.

Counsel concedes that there are certain Michigan cases holding that the state liquor law results in a suspension of the power of municipalities to prohibit saloons, but contends that these cases are not fairly in point since the liquor law of Michigan is lengthy and goes into minute details which the Michigan court regarded as clear evidence of an intention that the general law should be exclusive. If the argument is applicable it could be answered by calling attention to the provisions of our act and its minute details in providing for the adoption of anti-saloon territory, and the enforcement of its provisions; but the contention is immaterial for the reason that the express declarations contained in our act are conclusive of the controversy, and, to our mind, leave no room for contention. It follows that the defendant should have been prosecuted for the violation of the Local Option Law.

The judgment is affirmed.            *Affirmed.*

CHIEF JUSTICE CAMPBELL, and Mr. JUSTICE GABBERT concur.